**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: __________

FILED BY VB D.C.
SEP 16 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

VINCENT ANNUNZIATA, individually and d/b/a THUNDER VAULT LIVE,

Plaintiff,

v.

TANNER PAUL HUTCHENS, individually and d/b/a "POKE PIG," POKEPIG, LLC, a Utah limited liability company, and JOHN DOE NO. 1,

Defendants.

_______________________________________/

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE, PURSUANT TO FED. R. CIV. P. 65**

Plaintiff, Vincent Annunziata, individually and d/b/a Thunder Vault Live ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 65(b), respectfully moves this Court for entry of a Temporary Restraining Order and an Order to Show Cause why a preliminary injunction should not issue against Defendants, Tanner Paul Hutchens, individually and d/b/a "Poke Pig", and PokePig, LLC (collectively, "Defendants"), and states as follows:

## I. INTRODUCTION

1. This is an emergency motion arising from Hutchens' ongoing, recorded campaign to disrupt Plaintiff's live-stream trading card business by directing Hutchens'

own audience to flood, disrupt, and falsely mass-report Plaintiff's livestreams, while simultaneously broadcasting false accusations that Plaintiff engages in fraudulent auction practices ("shill bidding"). Hutchens' own recorded statements, made during livestreams on or about September 11 and 12, 2026, establish both the wrongful conduct and Hutchens' intent to continue it.

2. Absent immediate injunctive relief, Hutchens' coordinated raids and false public accusations will continue to damage Plaintiff's business reputation and goodwill, harm that once inflicted upon a live-auction business built on buyer trust cannot be adequately remedied after the fact by an award of money damages alone.

## II. FACTUAL BACKGROUND

3. Plaintiff operates a trading card business known as Thunder Vault Live, conducting live-stream sales and auctions of graded and raw trading cards via TikTok Live.

4. Hutchens operates and/or controls a competing TikTok livestream account known as "Poke Pig," through which Hutchens broadcasts to an audience of approximately 1.2 to 1.3 million viewers/followers.

5. During livestreams broadcast on or about September 11 and September 12, 2026, Hutchens, on camera and with recorded audio, directed Hutchens' viewers as follows:

> *"Guys, y'all are welcome while I sit here and do this to go into his chat and just go spam him. Y'all, y'all are welcome to go do that while I'm doing this. Come back into T minus three minutes. Go, go, go! Give the chat a hard time. Go, go, go! Absolutely, go raid him, please. Do it. It's already happening."*

6. Hutchens further stated:

> *"And guys, while you're over there, I'm gonna go ahead and just say this: while you're over there, please report it. Please report it. Like it's—it's this is like—this is shill bidding. You can report like—dude, it's all going on. Like all the things that should not be going on during auctions is happening."*

7. At the close of a subsequent broadcast, Hutchens told viewers: "Good rest of your night. We will see you Tuesday, and go raid Thunderbolt. Go raid Thunder Vault. Have a good night," confirming Hutchens' intent to continue directing disruptive conduct against Plaintiff's business going forward.

8. Contemporaneous chat activity shows viewers responding to and acting upon Hutchens' directions in real time, and Plaintiff's business has suffered disrupted livestreams, manipulated bidding activity, and damage to its reputation as a direct and proximate result.

9. Hutchens has announced an intent to repeat this conduct at Plaintiff's next scheduled livestream, such that the harm is ongoing and imminent absent court intervention.

9A. On or about September 7, 2026, in a Discord server operated by and/or associated with Hutchens' "Poke Pig" community, an individual using the alias "Zach Rips" proposed a scheme to use freeze-enabled or low/no-balance prepaid payment methods to place bids on Plaintiff's auctions that would later decline, so as to "bring [Plaintiff's] business to a halt," and tagged Hutchens (under his "LT" alias) in that proposal. Hutchens responded "Do it." A true and accurate screenshot of this exchange, reproduced immediately below, is also attached as Exhibit C to the accompanying Declaration of Vincent Annunziata.




*Discord Auction Sabotage Instructions, Published September 7, 2026 – Defendant Hutchens ("LT") directing that the proposed scheme be carried out.*

9B. As a direct and proximate result of that scheme, Plaintiff is presently experiencing, on an ongoing basis as of the filing of this Motion, fraudulent bids on his livestream auctions followed by cancelled or declined payments, disrupting active auctions in real time.

## III. LEGAL STANDARD

10. A party seeking a temporary restraining order or preliminary injunction must demonstrate: (a) a substantial likelihood of success on the merits; (b) that irreparable injury will be suffered absent an injunction; (c) that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (d) that the injunction, if issued, would not be adverse to the public interest. *See* Fed. R. Civ. P. 65; *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

11. Pursuant to Rule 65(b)(1)(B), Plaintiff certifies the efforts made to give notice to Defendants and the reasons why notice should not be required, as set forth below.

**CERTIFICATION OF EFFORTS TO PROVIDE NOTICE**

Plaintiff has not given Defendants advance notice of this Motion and respectfully submits that notice should not be required, for the following reasons:

(a) Defendant Hutchens has publicly stated, on the recordings described above, his intent to repeat the conduct at issue at Plaintiff's next scheduled livestream ("we will see you Tuesday, and go raid Thunder Vault"). Advance notice of this Motion would give Defendants the opportunity to accelerate or intensify that conduct before the Court can act.

(b) The primary evidence supporting this Motion consists of videos that Defendant Hutchens himself posted publicly. Advance notice would create a substantial risk that those videos, and the associated livestream chat records, would be deleted, edited, or otherwise made unavailable before they can be preserved.

(c) Defendants' conduct has already produced real-world consequences beyond online disruption, including a threatening communication received by Plaintiff's associates as a foreseeable result of Defendants' instructions to their audience, underscoring the urgency of immediate relief without further delay for pre-motion notice.

For these reasons, Plaintiff respectfully requests that the Court proceed on an ex parte basis and waive the notice requirement as to this Motion only, without prejudice to Defendants' full opportunity to be heard at the Order to Show Cause hearing on whether a preliminary injunction should issue.

## IV. ARGUMENT

### A. Plaintiff Is Substantially Likely to Succeed on the Merits

12. **Tortious Interference with Business Relationships.** Under Florida law, a claim for tortious interference requires: (1) the existence of a business relationship; (2) knowledge of the relationship by the defendant; (3) an intentional and unjustified interference with the relationship; and (4) damage as a result. Hutchens' own recorded statements directing viewers to "raid" and "spam" Plaintiff's livestream chat establish intentional, unjustified interference with Plaintiff's relationships with its viewers, bidders, and customers.

13. **Defamation Per Se.** Hutchens' statements accusing Plaintiff of "shill bidding" and conduct that "should not be going on during auctions" constitute false statements of fact accusing Plaintiff of fraudulent and/or deceptive business practices, published to an audience of over one million viewers, and are actionable as defamation per se because they impugn Plaintiff in his trade or business.

13A. **Civil Conspiracy.** The Discord exchange described above shows an actual agreement between Hutchens and a second individual ("John Doe No. 1," proceeding under the alias "Zach Rips") to sabotage Plaintiff's auctions through fraudulent, intentionally-declining bids, an agreement Hutchens expressly endorsed by directing his community to "Do it." This, together with the resulting bidding irregularities Plaintiff is currently experiencing, establishes each element of civil conspiracy: an agreement, an unlawful object or unlawful means, an overt act, and resulting damage.

**B. Plaintiff Will Suffer Irreparable Harm Absent an Injunction**

14. Injury to business reputation and goodwill arising from public accusations of fraud is inherently difficult to quantify in monetary terms and is widely recognized as a form of irreparable harm warranting injunctive relief.

15. The harm here is ongoing and recurring: Hutchens has expressly stated an intent to repeat the conduct at Plaintiff's next livestream, such that each future broadcast is subject to further disruption and further false accusations absent court intervention.

**C. The Balance of Equities Favors Plaintiff**

16. Hutchens has no legitimate interest in organizing coordinated raids against a competitor's livestream or in publishing unsubstantiated accusations of fraud. Any burden an injunction places on Hutchens is far outweighed by the ongoing harm to Plaintiff's business.

**D. The Requested Relief Serves the Public Interest**

17. The public has an interest in fair and undisrupted commerce, and in ensuring that online marketplaces are not subjected to coordinated manipulation or false reporting campaigns.

**V. REQUESTED RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order: (a) enjoining Defendants, and all persons acting in concert with Defendants, from directing, encouraging, or soliciting any person to disrupt, "raid," mass-report, or otherwise interfere with Plaintiff's livestreams; (b) enjoining Defendants from publishing further false statements accusing Plaintiff of shill bidding or fraudulent auction conduct; (c) setting this matter for a hearing on an Order to Show Cause why a preliminary injunction should not issue; and (d) granting such other and further relief as the

Court deems just and proper.

Respectfully submitted,

/s/ Vincent Annunziata
Vincent Annunziata, Plaintiff, Pro Se
P.O. Box 6373
Pompano Beach, FL 33062
DATED: 09/16/26